# UNION NATIONAL BANK OF LITTLE ROCK, ARKANSAS *v.* FIRST STATE BANK & TRUST COMPANY OF CONWAY, ARKANSAS

CA 85-35 697 S.W.2d 940

Court of Appeals of Arkansas
Division II
Opinion delivered October 23, 1985

*Smith, Smith & Duke*, by: *Wm. David Duke*, for appellant.

*Clark & Adkisson*, for appellee.

GEORGE K. CRACRAFT, Chief Judge. Union National Bank of Little Rock appeals from an order of the chancery court holding that the lien of its second mortgage is junior to advances made by the first mortgagee even though the advances were optional, made after the second mortgage was recorded and were for purposes wholly unrelated to the primary obligations secured by the first mortgage. Upon our review of the record we find no error.

The facts necessary to a determination of the issue presented disclose that on May 4, 1981 Ray and Doris Jean Khoury executed a series of notes to First State Bank & Trust Company of Conway for the purpose of purchasing a home. The notes were secured by a first mortgage on the residence. The mortgage contained two clauses dealing with the debts to be secured. The first clause was typewritten and was as follows:

118

> This sale and conveyance is on the condition that, whereas, Mortgagors are justly indebted unto Mortgagee in the sum of Forty-Eight Thousand Thirty-five and 55/100 Dollars ($48,035.55) evidenced by a promissory note signed by the parties of the first part dated May 4, 1981 payable to the order of Mortgagee, bearing interest as stipulated therein, and due in installments over a period ending May 4, 1985, and in the further sum on $15,000.00 as evidenced by a note of even date herewith for said sum, bearing interest as herein set forth and due on September 4, 1981, and agrees to advance the additional sum of $11,964.45 as requested by Mortgagors to be repaid not later than September 4, 1981.

The priority of the notes described in this clause is not in issue. Immediately following that typewritten provision a clause in the printed mortgage form provided:

> In addition to securing the payment of the above described indebtedness, this instrument shall also secure the payment of any and all renewals of said obligation, or any portion thereof, together with any and all additional amounts that Mortgagors now owe or may hereafter owe unto the Mortgagee, whether as principal or surety, at any time between this date and the satisfaction of record of the lien of this instrument, including any and all future advances *and/or loans* that may be made by Mortgagee to Mortgagors, or either of them regardless of whether Mortgagee is now obligated to make such future advances or hereafter becomes obligated to make such future advances, further *regardless of whether or not this instrument is specifically referred to in the evidence of indebtedness* executed by Mortgagors with regard to such future advances, and further *regardless of whether or not such future advances may be for purposes related or unrelated to the purpose for which the original indebtedness secured hereby is loaned.* This mortgage shall not release or affect any other mortgage executed by Mortgagors, or either of them, unto the Mortgagee. [Emphasis supplied]

The priority of additional advances by First State Bank to the Khourys under this provision presents the issue on this appeal.

On November 3, 1981 the Khourys executed a second mortgage in favor of Union National Bank. While both mortgages were still in force First State Bank made an additional loan in the amount of $11,000 for the purchase of an Oldsmobile automobile. A security interest on the automobile was taken as collateral for the note. In March 1982 the First State Bank advanced the Khourys an additional $5,000 for the purchase of a Pontiac automobile for which it also took a security interest. On August 18, 1982 the First State Bank made an additional loan of $7,500 which was secured by a security interest on automotive repair equipment used in Khourys' business. None of the three notes referred to the May 4, 1981 mortgage as security.

The Khourys defaulted on the notes secured by both the first and second mortgages and upon the automobile and equipment notes. In the foreclosure order the chancery court declared that the lien of First State Bank's first mortgage extended to all of the notes executed by Khoury to First State Bank including the automobile and equipment notes.

■ The appellant contends that this ruling of the chancellor was in error for several reasons. It first argues that as the original note to First State Bank was made for the purchase of a home the future advance clause could not extend the lien to secure notes executed for the unrelated purposes of purchasing automobiles and business equipment. They rely on the well-settled rule that a mortgage given to secure a specific debt will not be extended to cover debts subsequently incurred unless they are of the same class or so related to the primary debt secured that the assent of the mortgagor will be inferred. The purpose for such a requirement is to prevent the extension of a lien by the use of general terms to debts which the debtor did not contemplate. *Bank of Searcy* v. *Kroh*, 195 Ark. 785, 114 S.W.2d 26 (1938); *Security Bank* v. *First National Bank*, 263 Ark. 525, 565 S.W.2d 623 (1978); *Hendrickson* v. *Farmers Bank & Trust Co.*, 189 Ark. 423, 73 S.W.2d 725 (1934).

This argument would be more persuasive in the absence of the quoted provision of the mortgage in which the Khourys expressly agreed that the lien of the deed of trust extends to all future advances made to them by First State Bank whether or not the note made reference to the first mortgage or the debt was

related or unrelated to the purpose of the original indebtedness secured. The rule of law set out in *Hendrickson* is designed to protect the borrower against the unwarranted extension of the lien for debts which the parties might not have intended. We are cited no cases which even suggest that the borrower might not waive the protection of that rule by express agreement as was done here.

■ Appellant argues that in construing future advances clauses the intention of the parties governs and is to be determined by considering all the circumstances surrounding the execution of the mortgage. Where the intention of the parties is expressed in unambiguous terms the court does not construe the clause but enforces it as written.

■ Nor do we find any inconsistencies between the two quoted clauses. The first one recites those specific debts and notes which are initially secured by the mortgage. The second one starts with the words "in addition to securing the payment of the above described indebtedness." The second clause is not inconsistent with the first but merely extends and broadens it. Nor do we find merit in the argument that the second quoted provision was in "fine print." The print was no different from any of the other printed portion of the mortgage in issue. We conclude that this argument was answered in *Benton State Bank* v. *Reed*, 240 Ark. 704, 401 S.W.2d 738 (1966). There the court saw no significance in the fact that the instrument contained some typewritten provisions and stated that to hold otherwise would declare that the printed portion of a mortgage carried no weight at all.

■ The record discloses that at the time the notes and mortgage in favor of Union National Bank were executed that bank was aware that the First State Bank held a first mortgage on the property; made no inquiry of that bank as to the balance due on the notes, and failed to give notice to First State Bank of the execution of the second mortgage. Under these circumstances we conclude that the case is controlled by *Alston* v. *Bitley*, 252 Ark. 79, 477 S.W.2d 446 (1972) where the court declared that a prior recorded mortgage securing optional future advances is superior to an intervening encumbrance if the first mortgagee does not have knowledge or actual notice, as distinguished from mere record notice, of the intervening lien.

 We conclude that the express language of the mortgage extended the lien of First State Bank's first mortgage to all of the advances whether related or unrelated to the primary purpose. We further conclude that as First State Bank had no actual notice of the taking of the second mortgage the chancellor was correct in concluding that the first mortgage lien attached to those future advances and was superior to the intervening encumbrances.

 Nor do we find merit in the contention that the chancellor erred in excluding the testimony of Khoury regarding his intent at the time the unrelated notes were executed. As the intention of the parties was expressly stated in a written instrument in clear and unambiguous terms, it was the function of the court to enforce it as written. The chancellor was correct in holding that the express agreement could not be varied by parol evidence.

Affirmed.

MAYFIELD and CLONINGER, JJ., agree.